IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
NOV 21 2007
Nov. 21, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JH

| | |
|---|---|
| SPARTAN TOOL, L.L.C., a Delaware Limited Liability Company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) C ) |
| MICHAEL LEMASTER, an Individual, | ) ) ) |
| Defendant. | ) ) |

07CV6579
JUDGE GUZMAN
MAG. JUDGE NOLAN

**JURY TRIAL DEMANDED**

## COMPLAINT

NOW COMES Plaintiff SPARTAN TOOL, L.L.C. ("Plaintiff" or "Spartan"), by and through its attorneys, Kenneth K. Dort, George R. Spatz and Jeremiah J. Posedel of McGuireWoods LLP, and for its complaint against Defendant MICHAEL LEMASTER ("Defendant" or "Lemaster"), states as follows:

### NATURE OF THE ACTION

1. This action is to seek redress for Lemaster's willful breach of the Confidentiality and Non-Competition Agreement that he entered into with Spartan.

### PARTIES

2. Spartan is a Delaware limited liability company with offices located at 1506 West Division Street in Mendota, Illinois. Spartan's members are other LLCs whose member's are either Delaware or Nevada corporations with their respective principal places of business located at 2626 Warrenville Road in Downers Grove, Illinois.

3. Lemaster is a former Spartan employee who resides at 3305 Nevada Drive in Anderson, Indiana and is a citizen of the State of Indiana.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

5. This Court has jurisdiction over Lemaster and venue is proper in this District because Lemaster expressly consented to the personal jurisdiction and venue of this Court. Section III.D of the Confidentiality and Non-Competition Agreement by and between Spartan and Lemaster dated May 8, 2003 (the "Agreement"), provides as follows:

> This Agreement and its subject matter have substantial contacts with Illinois, and all actions, suits or other proceedings with respect to this Agreement, shall be brought only in a court of competent jurisdiction sitting in DuPage County, Illinois, or in the United States District Court for the Northern District of Illinois, in Chicago. In any such action, suit or proceeding, such court shall have personal jurisdiction over all of the parties hereto, and service of process upon them under any applicable statutes, laws and rules shall be deemed valid and good.

A true and correct copy of the Agreement is attached hereto and incorporated herein as Exhibit A.

## LEMASTER'S EMPLOYMENT WITH SPARTAN

6. Founded in 1943, Spartan has been a leader in the sewer and drain cleaning industry. Spartan makes sewer and drain cleaning equipment, offers training to customers related to Spartan equipment, and provides constant support to customers over the long life of its equipment. Spartan is continually introducing new features that make sewer and drain cleaning simpler, safer and faster. Spartan machines are known for their toughness and are designed to withstand the rigors of professional use.

7. Spartan employs approximately twenty-five (25) Territory Managers who function as customer sales representatives, covering various sales regions throughout the United States. Territory Managers are responsible for identifying and continuously servicing Spartan

clients located in their respective regions. Territory Managers are issued a Spartan-owned van, containing an inventory of Spartan equipment and parts, as well as a mobile phone with SIMM card.

8.  On or about November 14, 1994, Lemaster, who did not have any prior experience in the sewer and drain cleaning business, was hired by Spartan. Lemaster was most recently employed by Spartan as a Territory Manager. During the course of his employment, Lemaster sold and serviced Spartan products in a region which included most of the State of Indiana and portions of the State of Kentucky. Additionally, Lemaster provided professional services to Spartan customers, including safety training, product instruction and repair services.

### THE AGREEMENT

9.  On May 8, 2003, Lemaster executed the Agreement. (See Exhibit A.)

10. Pursuant to Section II.A of the Agreement, Lemaster agreed not to directly or indirectly engage in or assist others to engage in any business which competes with Spartan for two (2) years after his termination from Spartan.

11. Specifically, Section II.A of the Agreement provides as follows:

> During the term of Employee's employment by Employer and for two (2) years thereafter, Employee agrees that Employee will not, without the prior written consent of Employer, directly or indirectly, whether as an Employee, officer, director, independent contractor, consultant, stockholder, partner or otherwise, engage in or assist others to engage in or have any interest in any business which competes with Employer in any geographic area in which Employer markets or has marketed its products during the year preceding termination.

(See Exhibit A.)

12. The Agreement is designed to protect Spartan's legitimate business interests. Spartan has invested ample time and financial resources into developing strong business relationships with its clients/customers and possesses near-permanent relationships with its

3

clients/customers. This is evidenced by the fact that Spartan clients have contacted Spartan directly to report Lemaster's post-resignation activities and to express their desire to remain Spartan customers.

13.     Many of the Spartan customers in Lemaster's former territory were Spartan customers prior to Lemaster's employment with Spartan in 1994. Due to the high quality and durability of the Spartan equipment, once a customer chooses Spartan, the customer relationship is long-term. To maintain the relationship with Spartan's customers, Lemaster would call on customers regularly—in some instances as frequently as once a week.

14.     Section III.C of the Agreement states that the right of the parties shall survive any termination of employment, without regard for the cause of termination. (See Exhibit A.)

### LEMASTER'S RESIGNATION AND WILLFUL BREACH OF THE AGREEMENT

15.     On June 1, 2007, Lemaster resigned from Spartan.

16.     Shortly after Lemaster resigned from Spartan, he became employed by and/or affiliated with and/or planned on becoming employed by or affiliated with, Service Spring Corporation d/b/a Drain Cables Direct ("Service Spring"), a direct competitor of Spartan that markets and competes against Spartan in the same geographic region once serviced by Lemaster for Spartan. Service Spring is a distributor of equipment manufactured by Spartan's competitors.

17.     Upon learning of this event, on July 3, 2007, Spartan, through its counsel, sent a letter to Lemaster demanding that he immediately cease and desist from any and all competitive actions in violation of the Agreement, including, but not limited to, communication with current Spartan customers.

18. On July 24, 2007, Lemaster, through his counsel, acknowledged his post-employment restrictions, but stated that he had never worked for Service Spring.

19. On August 13, 2007, Spartan, through its counsel, sent a letter to Lemaster, through his counsel, stating that if Lemaster's July 24, 2007 letter intended to assert that Lemaster was not working, and had no intentions of working, for a competitor of Spartan in any capacity, pursuant to the Agreement with Spartan, then Spartan would refrain from any further action against Lemaster at that time. Additionally, Spartan renewed its prior demand that Lemaster immediately cease and desist from any and all competitive actions in violation of the Agreement for a period of two (2) years from the date of his resignation.

20. In November 2007, Spartan learned that Lemaster has become employed by, or otherwise affiliated with, HD Supply ("HD"), a direct competitor of Spartan that markets and competes against Spartan in the same geographic region once serviced by Lemaster for Spartan.

21. On November 12, 2007, Spartan, through its counsel, sent a letter to Lemaster, through his counsel, again demanding that Lemaster immediately cease and desist from any and all competitive actions in violation of the Agreement for a period of two (2) years from the date of his resignation, including, but not limited to, his employment or affiliation with HD.

22. In Spartan's November 12, 2007 letter, Spartan requested that Lemaster respond to Spartan by November 16, 2007, informing Spartan that he agreed to comply with the Agreement and that he would cease and desist from any and all competitive actions in violation of the Agreement.

23. To date, Spartan has not received any response from Lemaster.

24. All of these activities were conducted in knowing violation of the express terms of the Agreement.

## COUNT I – BREACH OF THE AGREEMENT

25. For its Paragraph __, Spartan restates and realleges the allegations contained in paragraphs 1 through __ as if fully set forth herein.

26. On or about May 8, 2007, Spartan and Lemaster entered into the Agreement. (See Exhibit A).

27. The Agreement is a valid and enforceable contract.

28. Spartan has performed all of its obligations under the Agreement.

29. By the terms of the Agreement, Lemaster agreed to not directly or indirectly engage in or assist others to engage in any business which competes with Spartan for two (2) years after his termination.

30. The Agreement is supported by adequate consideration. Lemaster, in agreeing to the competitive limitations, was employed by Spartan and received access to Spartan's existing customer lists and resources.

31. After Lemaster resigned, he knowingly, intentionally, and willfully breached his obligations under the Agreement by becoming employed by or affiliated with HD, a direct competitor of Spartan that markets and competes against Spartan in the same geographic region once serviced by Lemaster for Spartan.

32. As a result of Lemaster's actions, Spartan has (i) been irreparably harmed, which harm is continuing, and (ii) has suffered and continues to suffer damages in an amount to be determined at trial in excess of $75,000.00.

## JURY DEMAND

Spartan hereby demands a trial by jury as to all appropriate claims pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure.

WHEREFORE, Spartan respectfully prays that this Court enter an Order which:

    a.    Permanently enjoins Lemaster for a period of two (2) years from the date of his June 1, 2007 resignation from engaging in competition with Spartan by contacting any entities who were Spartan customers during the eighteen (18) months immediately preceding his resignation;

    b.    Permanently enjoins Lemaster for a period of two (2) years from the date of his June 1, 2007 resignation from engaging in competition with Spartan by contacting any person with whom he had contact in connection with any entity who was a Spartan customer during the eighteen (18) months immediately preceding his resignation (whether or not that person is still affiliated with such entity or is now affiliated with someone else, unless the latter is not a current customer of Spartan selling/providing goods and/or services similar to those sold/provided by Spartan);

    c.    Permanently enjoins Lemaster from disclosing any confidential information pertaining to Spartan of which Lemaster became aware while an employee of Spartan;

    d.    Awards Spartan damages in an amount to be demonstrated at trial in excess of $75,000.00;

    e.    Awards Spartan its costs, attorneys fees and punitive damages; and

f.  Provides for such other and further relief as the Court deems just and appropriate.

                Respectfully submitted,
                **SPARTAN TOOL, L.L.C.**

                By: _____
                      One of Its Attorneys

Kenneth K. Dort (ARDC No. 6193880)
George R. Spatz (ARDC No. 6278494)
Jeremiah J. Posedel (ARDC No. 6291892)
McGUIREWOODS LLP
77 W. Wacker Drive, Suite 4100
Chicago, Illinois 60601
312.849.8100
kdort@mcguirewoods.com

\4869308.1

8



# Spartan Tool L.L.C. 

800/435-3866

## CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

Agreement dated this 1st day of May, 2003 between Spartan Tool, L.L.C. with its principal office located at 1506 W. Division St. referred to as Employer, and Mike Lemaster, of 1105 N. Nursery Road, Anderson, IN 46012 referred to as Employee.

### RECITALS

A. Employer has employed Employee to devote his full time, attention, and energies to the business of Employer and to use his best efforts, skill and abilities in performing the specific duties of such employment, and Employee shall not, without prior consent of Employer, either directly or indirectly, engage in any other occupation, profession or business.

B. As a consequence of the employment by Employer, Employee will have access to information not generally known to the general public or in the industry in which Employer is or may become engaged about Employer's products, processes, customers, services, suppliers, pricing policies and related matters. In addition, Employer may provide training to Employee in relation to these areas. It is the desire of the Employer and Employee that all such training and information be and remain confidential.

### AGREEMENTS

In consideration of Employer's employment of Employee and the covenant and obligations set forth in this Agreement and other valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

### I. CONFIDENTIALITY

A. NONDISCLOSURE. Employee will not, during or after the term of this Agreement, directly or indirectly, use, disseminate, or disclose to any person, firm, or other business entity for any purpose whatsoever, any information not generally known in the industry in which Employer is or may be engaged which was disclosed to Employee or known by Employee as a consequence of or through his employment by Employer. This includes information regarding Employer's products, processes, customers, services, suppliers, and related matters, and also includes information relating to research, development, inventions, manufacture, purchasing, accounting, engineering, marketing, merchandising, and selling.

B. CONFIDENTIAL RELATIONSHIP. Employee shall hold in a fiduciary capacity for the benefit of Employer all information described in Section I, A., above, along with any and all inventions, discoveries, concepts, ideas, improvements or know how, discovered or developed by Employee, solely or jointly with other Employees, during the term of this Agreement, which may be directly or indirectly useful in or related to the business of Employer or its affiliates, or may be within the scope of its or their research or development work.

C. CUSTOMER LISTS. The Employee shall, at the time of and during employment, furnish a complete list of all of the correct names and places of businesses of all its customers, immediately notify Employer of the name and address of any new customer and report all changes in location of old customers, so that upon the termination of employment, Employer will have a complete list of the correct names and addresses with which it has dealt.

D. RETURN OF DOCUMENTS. To protect the interests of Employer, Employee agrees that, during or after the termination of Employee's employment by Employer, all documents, records, notebooks and similar repositories containing such information described in paragraph IA, IB, and IC, above, including copies thereof, then in Employee's possession or work area, whether prepared by Employee or others, are the property of Employer and shall be returned to Employer upon Employer's request.

## II. NONCOMPETITION

A. EMPLOYEE CONDUCT WITH RESPECT TO COMPETITORS. During the term of Employee's employment by Employer and for two (2) years thereafter, Employee agrees that Employee will not, without the prior written consent of Employer, directly or indirectly, whether as an Employee, officer, director, independent contractor, consultant, stockholder, partner or otherwise, engage in or assist others to engage in or have any interest in any business which competes with Employer in any geographic area in which Employer markets or has marketed its products during the year preceding termination.

B. SOLICITATION OF EMPLOYEES. Employee agrees that during the term of Employee's employment and for two (2) years thereafter, Employee will not induce or attempt to induce any person who is an Employee of Employer to leave the employ of Employer and engage in any business which competes with Employer.

C. MAXIMUM RESTRICTIONS OF TIME, SCOPE, AND GEOGRAPHIC AREA INTENDED. The parties agree and acknowledge that the time, scope and geographic area and other provisions of this Agreement have been specifically negotiated by the parties, and Employee specifically hereby agrees that such time, scope and geographic areas, and other provisions are reasonable under these circumstances. Employee further agrees that if, despite the express agreement of the parties to this Agreement, a court should hold any portion of this Agreement unenforceable for any reason, the maximum restrictions of time, scope and geographic area reasonable under the circumstances, as determined by the court, will be substituted for the restrictions held unenforceable.

## III. BREACH OF AGREEMENT

A. BONUS FORFEITURE. If Employee, without written consent of Employer, fails to comply with any provision of this Agreement, Employee's right to any bonus which Employee

would otherwise be entitled shall terminate and the Employer's obligation to make any such payment shall cease.

      B. ADDITIONAL REMEDIES. Employee agrees that violating Section I of this Agreement at any time, including during litigation, will produce severe damage and injury to Employer. In the event of the breach of, or threatened breach by Employee of Section I of this Agreement, the Employer shall be entitled to seek injunctive relief, both preliminary and permanent, enjoining and restraining such breach or threatened breach. Such remedies shall be in addition to all other remedies available to the Employer in law or in equity, including but not limited to the Employer's right to recover from the Employee any and all damages that may be sustained as a result of the Employee's breach.

      C. AGREEMENT SURVIVES TERMINATION. All rights of the parties pursuant to this Agreement shall survive any termination.

      D. CHOICE OF LAW. The validity, interpretation and performance of this Agreement shall be controlled by and construed under the laws of Illinois. This Agreement and its subject matter have substantial contacts with Illinois, and all actions, suits or other proceedings with respect to this Agreement, shall be brought only in a court of competent jurisdiction sitting in DuPage County, Illinois, or in the Untied States District Court for the Northern District of Illinois, in Chicago. In any such action, suit or proceeding, such court shall have personal jurisdiction over all of the parties hereto, and service of process upon them under any applicable statutes, laws and rules shall be deemed valid and good.

      E. ATTORNEY FEES. If an attorney shall be retained to interpret or enforce the provisions of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, including any such fees set by the trial or appellate court upon trial or appeal.

This Agreement is executed as of the date first written above.

Employee

_____ 5-8-03
Mike Lemaster